GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6665
E-mail: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
TERESA M. PILATOWICZ
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
DYLAN T. CICILIANO
Nevada Bar No. 12348
E-mail: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Empery Tax Efficient, L.P.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.: 22-14422-NMC<br><br>Chapter 11 |
| EMPERY TAX EFFICIENT, LP,<br><br>Plaintiff,<br><br>v.<br><br>RYAN DREXLER,<br><br>Defendant. | Adv. Pro. No. |

**ADVERSARY COMPLAINT**

Plaintiff Empery Tax Efficient, LP ("Senior Creditor" or "Plaintiff") by and through its undersigned attorneys, files this complaint ("Complaint") against defendant Ryan Drexler ("Drexler") and alleges as follows:

**I.**
**GENERAL ALLEGATIONS**

1. In 2021, a group of investors, collectively the "Noteholders", provided the publicly traded Debtor MusclePharm Corporation ("Debtor") with millions of dollars in short-term

financing ("Financing"). The Financing occurred while there was very-public litigation between Debtor and Debtor's shareholder, White Winston Select Asset Fund Series Fund MP-18, LLC ("White Winston"), wherein White Winston alleged, *inter alia*, that Drexler had enriched himself through convertible notes issued by Debtor.

2. As a condition precedent to the Financing, the Noteholders required that Debtor's Chief Executive Officer, Chairman, largest shareholder, and debtholder, Drexler agree to and execute an intercreditor and subordination agreement (the "Intercreditor/Subordination Agreement"). Not only did the Intercreditor/Subordination Agreement set forth the parties' relative payment priorities, subordinating all debts held by Drexler to the Noteholders, but the parties prominently and expressly established their relative rights in the event Debtor found itself in bankruptcy.

3. Specifically, Drexler agreed in the Intercreditor/Subordination Agreement that in no way would he interfere with the Noteholder's ability to collect their debt against Debtor prior to Drexler's recovery, and specifically that he would have no standing to challenge the sale of Debtor's assets, would not vote against a plan supported by the Noteholders, and would not contest the Noteholders' claims. Furthermore, he granted the Noteholders a broad power of attorney over many decisions to be made by Drexler in the bankruptcy. In other words, while Drexler now complains that he does not have a seat at the negotiation table, in fact, Drexler contractually agreed to forego most of those rights and now only enjoys those limited rights to which he did not forego. What was abundantly clear is that Drexler was prohibited from interfering with the plan process and Noteholders' ability to negotiate a consensual resolution of their and Drexler's claims with the Debtor and the Debtor's other creditors. This probation extends to initiating actions, including adversaries and contested actions, which impact the Senior Creditor's ability to enforce its rights, as it sees fit.

4. As time went on, Drexler's malfeasance was laid bare, as instances of his deceit and wrongdoing became public through the disclosure of a previously undisclosed ongoing SEC investigation, and a number of lawsuits, including allegations that Drexler had adulterated Debtor's products, leading to complaints from Debtor's then largest customer, Costco, and

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

allegations that Drexler devised and implemented a scheme to go from contract manufacturer to contract manufacturer, running up the payables with each contract manufacturer into the millions, and then refusing to pay the invoices. After burning all bridges and facing the inevitable, Drexler caused Debtor to commence the above-captioned bankruptcy case ("Chapter 11 Case") for the purpose of halting Noteholders' efforts to enforce their rights.

5. Drexler retained Debtor's counsel and mounted an effort to promote White Winston's proposed debtor in possession financing. At some point in December 2022 or January 2023, Drexler ceased serving as Debtor's CEO and chairman. After losing his ability to direct every decision of the Debtor for his personal benefit, Drexler became at odds with Debtor's fiduciaries, who, rather than promoting Drexler's interests, were and are acting in the best interest of the estate and all creditors.

6. Since his departure, in violation of the Intercreditor/Subordination Agreement, Drexler has menaced and taken various actions to undermine and interfere with the recovery by Senior Creditor, as collateral agent for the Noteholders. For example, Drexler brought an action in Nevada state court against Senior Creditor; Drexler sued Tim Silver, a portfolio manager of Empery Asset Management, LP ("EAM"), Senior Creditor's investment advisor, in yet another Nevada State Court, over communications Silver had with other creditors made "during the scope" of the Chapter 11 Case; and it is believed that Drexler launched a clandestine campaign to intimidate EAM's principal, Ryan Lane, through anonymous communications to his spouse, his children's school board, his neighbors and to members of the town in which he resides through posts on social media groups. Senior Creditor has and continues to successfully defend against these wrongful actions of Drexler outside of the Bankruptcy Court.

7. However, now that Debtor, the Senior Creditor, White Winston, and the unsecured creditors through the Official Committee of Unsecured Creditors ("Committee") have reached a term sheet agreement that is expected to resolve most of the controversy and disputes in the Chapter 11 Case, Drexler has embarked on a last-ditch effort to sabotage Debtor's restructuring and the bankruptcy itself. Drexler has launched a scorched earth campaign to intimidate Debtor's suppliers through overbroad and abusive discovery requests claiming, without evidence, price

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

gouging. Moreover, Drexler's counsel has been abundantly clear that Drexler's actions and barrage of discovery are for the express purpose of challenging the plan term sheet, to disrupt Debtor's current management, and to object to the 363-sale called for in the plan term sheet as well as the plan of reorganization called for therein, all of which are express violations of his Intercreditor/Subordination Agreement and the parties' respective rights.

8. While Drexler has approached the Court with ideas of fairness, his own aim and goal is to interfere with the recovery by the Senior Creditor and other creditors of Debtor. ***Drexler ignores that he bargained away many of the rights otherwise provided to him by the Bankruptcy Code, including his right to interfere or object to Senior Creditor's action***s. Moreover, Drexler is not a do-gooder; he is an obstructionist out to maximize his personal gain at the cost of the estate. Without years of Drexler's gross mismanagement and broken promises and agreements to vendors, investors, and lenders, Debtor would not be in bankruptcy.

9. Accordingly, Senior Creditor brings this action to enforce the Intercreditor/Subordination Agreement, as well as to specifically enforce the terms thereof.

## II.
## PARTIES

10. Senior Creditor is a Delaware limited partnership. Senior Creditor is the collateral agent for the Noteholders and a party to that certain October 13, 2021 Intercreditor and Subordination Agreement, as well as the amendment thereto (collectively, the "Intercreditor/Subordination Agreement").

11. Ryan Drexler's principal residence is, and at all times relevant herein was, in the state of State of Nevada.

## III.
## JURISDICTION AND VENUE

12. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding. This Court has jurisdiction over each of the Defendants because their actions were designed to deplete the bankruptcy estate.

13. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this proceeding

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

arises under cases pending in this Judicial District.

14. Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## IV.
## FACTUAL BACKGROUND

**A. An Intercreditor/Subordination Agreement between Debtor, Drexler and the Noteholders was a condition precedent to millions of dollars in secured pre-petition financing.**

15. Drexler was Debtor's largest shareholder, its Chief Executive Officer and Chairman of its Board of Directors.

16. Drexler alleges that he made a series of loans to Debtor to fund its business operations that were initially secured by Debtor's collateral.

17. On October 13, 2021, Senior Creditor, Empery Master Onshore, LLC ("EMO"), Empery Tax Efficient III, LP ("ETE3"), and Empery Debt Opportunity Fund, LP ("EDOF," and collectively with EMO, Empery and ETE3, the "Empery Noteholders"), along with Ionic Ventures, LLC, Anson Investments Master Fund LP, CVI Investments, Inc., HB Fund LLC, Intracoastal Capital LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, L1 Capital Global Opportunities Master Fund, and Altium Growth Fund, LP (collectively, with the Empery Noteholders the "October Noteholders") entered into a Securities Purchase Agreement (the "SPA") with Debtor. Debtor issued the October Noteholders notes in the principal amount of $8,197,674.42. Senior Creditor is the Collateral Agent for all secured Noteholders.

18. The SPA is not a standalone document and incorporates the "Transaction Documents," which are defined to include the Intercreditor/Subordination Agreement between Drexler and the October Noteholders.

19. In conjunction with the SPA, Debtor issued the October Noteholders Original Issue Discount Senior Secured Note Due April 13, 2022 (collectively, the "October Notes"), which had a maturity date that could be extended up to 45 days.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

20. Also on October 13, 2021, Debtor entered into a Pledge and Security Agreement (the "Security Agreement"), granting security interests, and pledging a substantial portion of its and its subsidiaries personal and intellectual property to the October Noteholders (hereinafter, the "Collateral").

21. At the time, Drexler also held certain security interests in the Collateral. Accordingly, and as an express condition precedent to the effectiveness of the SPA, on October 13, 2021, Drexler, the October Noteholders, and Debtor also entered into the Intercreditor/Subordination Agreement that defines the relative rights of those who held security interests in the Collateral.

22. In March 2022, Debtor requested permission from the Noteholders to establish a new revolving credit facility with Drexler to finance inventory to better control Debtor's margins on orders with Debtor's then largest customer, Costco. On March 8, 2022, Debtor issued Drexler an unsecured promissory note (the "Drexler Revolver").

23. At about the same time that MusclePharm and Drexler entered into the Drexler Unsecured Revolver and Drexler received the Drexler Revolver Note, Drexler, the October Noteholders and Debtor entered into the First Amendment to Intercreditor and Subordination Agreement (the "First Amendment"). The First Amendment was expressly entered into because: "[Drexler] desires to extend credit to [Debtor] and [Debtor] desires to borrow from [Drexler], pursuant to the terms of the Unsecured Revolving Promissory Note dated as of the date hereof in the form attached hereto as Exhibit A . . . ." (*Id* at p.1).

**B. The Intercreditor/Subordination Agreement defined and limited Drexler's rights in the event of a Debtor's Bankruptcy.**

24. Under Section 11 U.S.C. §510, a properly executed intercreditor agreement overrides priorities and allows parties to customize their rights. *In re Grail Semiconductor Sedgwick Fundingco, LLC v. Newdelman*, 15-29890-A-7, 2022 WL 194384, at *21–22 (Bankr. E.D. Cal. Jan. 20, 2022). Intercreditor agreements define the rights and remedies of creditors vis-à-vis each other with respect to a common debtor. *Bowling Green Sports Center, Inc., v. G.A.G. LLC*, 413 Ill.Dec. 123, 128 (Ill. App. Ct. 2017); 11 U.S.C. § 510(a); *Sun Life Assurance Co. of*

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*Canada v. Great Lakes Business Credit LLC*, 968 F.Supp.2d 898, 910 (N.D. Ill. 2013) (applying Michigan law); Jonathon P. Friedland, *Commercial Bankruptcy Litigation* § 18:1 (January 2021) (such agreements "confirm[ ] or modif[y] the pre-existing priority rankings of those claims relative to each other...").

25. The Intercreditor/Subordination Agreement is an enforceable subordination agreement under 11 U.S.C. § 510, and is "effective before, during and after the commencement of an Insolvency Proceeding with respect to Borrower." (Intercreditor/Subordination Agreement at Section 14).

26. Drexler, the Debtor, and Senior Creditor, as representative on behalf of the Noteholders, signed the Intercreditor/Subordination Agreement.

27. The Intercreditor/Subordination Agreement defines an "Insolvency Proceeding" as "any case, action or proceeding before any court or other Governmental Authority relating to bankruptcy, reorganization, insolvency, liquidation, receivership, dissolution, winding-up or relief of debtors or (y) any general assignment for the benefit of creditors, formal or informal moratorium, composition, marshaling of assets for creditors or other, similar arrangement in respect of its creditors generally or any substantial portion of its creditors, in each case, undertaken under the Bankruptcy Code or other applicable law." Intercreditor/Subordination Agreement at Section 3. The Chapter 11 Case is undeniably an Insolvency Proceeding under the Intercreditor/Subordination Agreement.

28. Under Section 2 of the Intercreditor/Subordination Agreement, Drexler plainly subordinated any interest that he had in the Collateral to the Senior Creditor, as well as all other debts. Specifically, "all loans, advances, debts, liabilities, obligations debit balances, covenants and duties at any time or times owed by" Debtor to Drexler or to any entity control by Drexler, were subordinated in right of payment to "all loans, advances, debts, liabilities, obligations, debit balances, covenants and duties at any time or times owed by Borrower or any of its subsidiaries to [the Senior Creditor] under the Securities Purchase Agreement, the Notes or any other Transaction Document . . . , whether now or hereafter created . . . (Intercreditor/Subordination Agreement at Section 3, First Amendment at Section 3). This expressly included all loans made or credit

extended to Debtor in an Insolvency Proceeding—i.e. debtor in possession financing. Additionally, that included all attorneys' fees incurred by the Senior Creditor in the Insolvency Proceeding.

29. Drexler further agreed that until the Senior Creditor were indefeasibly paid in full, Drexler would not exercise his rights under certain lending agreements and would not exercise "any other right remedy available at law or equity, nor will [Drexler] commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against Borrower." (Intercreditor/Subordination Agreement at Section 4).

30. In an Insolvency Proceeding, Drexler expressly agreed that the Noteholder's shall receive "full payment" before Drexler receives any payments from Debtor. (Intercreditor/Subordination Agreement at Section 7). All payments otherwise received by Drexler from Debtor are to be delivered to the Senior Creditor, until they are paid in full. (*Id*. at Section 6).

31. Importantly, Drexler waived any right to "take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Senior Debt or the Liens of Senior Creditor in respect of any of the Collateral or the provisions of this Agreement." (Intercreditor/Subordination Agreement at Section 10). That waiver extends to "***any action that would interfere with any exercise of rights or remedies undertaken by Senior Creditor under the Senior Loan Documents***," as well as any right to "contest, protest, object to, or interfere with the manner in which Senior Creditor seeks to enforce its rights and remedies under the Senior Loan Documents, including enforcement of its Liens in any Collateral." (*Id*.)(emphasis added).

32. Expressly, Drexler, Debtor and the Senior Creditor agreed on the parties' respective rights in the event of an Insolvency Proceeding:

a. The Senior Creditor will be paid in full prior to Drexler receiving any payment or distribution. Section 15.1.

b. Drexler irrevocably directs the Debtor or any other person with authority, including a trustee, to pay all distributions due to Drexler to the Senior Creditor. Section 15.2.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

c. Drexler agreed not to "initiate, prosecute or participate in any claim, action or other proceeding challenging the enforceability, validity, perfection or priority of any portion of the Senior Debt or any liens or security interests securing any portion of the Senior Debt." Section 15.3

d. Drexler agreed that he "will not object to or oppose" "any sale or other disposition of any property security all or any party of the Senior Debt . . . under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code," if the Senior Creditor consented to such sale or disposition." Section 15.4.

e. Drexler agreed that he would not vote his claim in any plan of reorganization that does not pay the Senior Creditor in full or would otherwise be inconsistent with his obligations in the Intercreditor/Subordination Agreement. Section 15.5.

f. Drexler agreed that his claims were to be treated as a separate class from the Senior Creditor. Section 15.7.

33. Furthermore, Drexler appointed the Senior Creditor as his attorney in factor, and granted Senior Creditor a power of attorney with full power of substitution to, *inter alia*:

a. to vote such claim to accept or reject any plan of reorganization, and

b. to take any other action in connection with any such Insolvency Proceeding that Subordinated Creditor would be authorized to take but for this Agreement.

(Intercreditor/Subordination Agreement at Section 16).

**C. Drexler is expressly interfering with Senior Creditor's rights under the Intercreditor/Subordination Agreement.**

34. Throughout the Chapter 11 Case, Drexler has been adverse to the Senior Creditor. He has engaged in overt and covert acts to undermine and harass Senior Creditor. *See e,g, Drexler v. Silver*, Case No. 3:23-cv-00128-RCJ (D. Nev. 2023). Drexler's conduct during these proceedings is a microcosm of his perverse acts that caused Debtor to file the Chapter 11 Case in the first instance.

35. To that end, Drexler took overt actions to assist White Winston in its failed efforts to provide DIP Financing to Debtor, in lieu of Senior Creditor's proposal, a violation of the

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Intercreditor/Subordination Agreement.

36. Despite Drexler's best efforts to sow discord, sabotage the Chapter 11 Case and harm the Senior Creditor, over the last several months, the Senior Creditor, the successor to secured creditor Prestige Capital Finance, LLC's claim, the Committee, Debtor, and White Winston negotiated and agreed to a "Plan Term Sheet" (the "Plan Term Sheet"). The Plan Term Sheet contains the "material terms" to be incorporated into the Debtor's chapter 11 plan of reorganization. The Plan Term Sheet further calls for a 363 Sale under the Bankruptcy Code, for substantially all of Debtor's assets, in which the Senior Creditor holds a secured interest. In other words, the Secured Creditor has elected how it would enforce its rights, and Drexler was prohibited from taking ***any action that would interfere*** with the exercise of those rights.

37. The Intercreditor/Subordination Agreement expressly prevents Drexler from taking any action that interferes with the Senior Creditor's rights in the Collateral, including a 363 sale. Likewise, the Senior Creditor is entitled to, as Drexler's attorney in fact and under a power of substitution, agree to a proposed plan and take any other action that Drexler is prohibited from taking.

38. It is known that Drexler became aware of the Plan Term Sheet several weeks before it was finalized, as Drexler's escalated conduct demonstrates. Finding himself without a seat at the table, ***a seat he expressly waived in the Intercreditor/Subordination Agreement***, Drexler devised alternative illicit means to leverage parties in interest.

39. Foremost, and as detailed in the record, Drexler issued a dozen or more Rule 2004 exams, subpoenas, and requests for production of documents to Debtor, its employees, and other creditors. The onerous and extensive subpoenas were designed to overburden and tax the estate and creditors to the point that they would seek to abandon the Plan Term Sheet in favor of settlements with Drexler. In the most literal sense, they were designed to interfere with the Plan Term Sheet and prevent the Secured Creditor from recovering on its claim, express violations of the Intercreditor/Subordination Agreement.

40. Then, in a brazen attempt to circumvent the Intercreditor/Subordination Agreement and halt the Plan Term Sheet, Drexler filed his baseless "Motion for the Appointment of a Chapter

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

11 Trustee" [ECF No. 447] (the "Trustee Motion"). The Trustee Motion is in and of itself a violation of the Intercreditor/Subordination Agreement.

41. The Trustee Motion transparently admits that Drexler seeks the appointment of a receiver to impede the settlement of the Senior Creditor's claims, as contemplated by the Plan Term Sheet. (ECF No. 447 at p.3:3-8). Moreover, it outrageously seeks to remove Debtor's independent director and counsel, both of whom were court appointed officers of this Court. Again, the intent is clear, Drexler opposes the Plan Term Sheet—something he cannot do—and therefore seeks to interfere with the administration of the estate to upset the 363 Sale and the plan outlined in the Plan Term Sheet.

42. Moreover, as admitted in the Trustee Motion, Drexler lacks any evidence of the "market manipulation" he boldly asserts, and simply claims that a widespread investigation is needed. In other words, Drexler is aimlessly harassing creditors and suppliers to interfere with the Senior Creditor's exercise of its rights, in violation of his contractual obligations under the Intercreditor/Subordination Agreement. But that of course is his "modus operandi," as Drexler has already sued Senior Creditor and Tim Silver for negotiating with creditors and suppliers during the course of the Chapter 11 Case. Drexler wants it to be made known that he will sue anyone that opposes his wishes, a tactic he has followed for years evidenced by a long "rap-sheet" of civil cases.

43. As Drexler's counsel argued, in violation of the Intercreditor/Subordination Agreement, Drexler now asserts that the Plan Term Sheet "is strong evidence in favor of the appointment of a Chapter 11 trustee," and wants a trustee to reconsider the Plan Term Sheet. [May 9, 2023 Transcript at p. 14:22-23]. In fact, the only purpose of the Trustee Motion is to thwart the Plan Term Sheet and to interfere with the Secured Creditor's exercise of its rights.

44. Drexler, in violation of the Intercreditor/Subordination Agreement, argues that it is "highly likely" that he will oppose the approval of a plan support agreement, a 9019 motion, and a 363 sale of Debtor's assets, all of which interfere with Senior Creditor's right to collect in full the claims on behalf of the Noteholders. [*Id*. at pp. 15:1-16-1]. Additionally, Drexler intends to object to the sale procedures, rights he waived. [*Id*. at p.16:2-13]. He likewise contends that he will

second guess "debtor's business judgment" and contends that he will advocate a plan contrary to that advanced by Senior Creditor, again a violation of the Intercreditor/Subordination Agreement. [*Id*. at p. 17].

45. Directly contrary to the Intercreditor/Subordination Agreement, Drexler further argued and challenged the Secured Creditor's claim amount and credit bid amount, again in violation of the Intercreditor/Subordination Agreement. [*Id*. at p.10-15].

46. Finally, Drexler argued that he is in fact seeking a Trustee to defeat the Plan Term Sheet, insisting that he wants an "independent trustee in this case, someone who will negotiate with all the parties and be in a position to make truly independent business decisions to restructure and improve the operations and enhance the value of the estate for all the stakeholders." [May 9, 2023 Transcript at p.19:7-11]. In other words, he wants a Trustee to renegotiate terms that are different from those set forth in the Plan Term Sheet. Plainly, Drexler is seeking a Trustee to do expressly what he is forbidden to do, interfere with the Senior Creditor's rights to recover claims on behalf of the Noteholders.

## <u>CLAIMS FOR RELIEF</u>

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

47. Senior Creditor realleges and adopts the allegations set forth in the preceding paragraphs as if fully set forth herein below.

48. The Intercreditor/Subordination Agreement and the First Amendment are valid and enforceable agreements under New York state law. Moreover, they are enforceable under 11 U.S.C. § 510.

49. The Intercreditor/Subordination Agreement sets forth the parties' specific rights, including Drexler's rights and obligations in the bankruptcy.

50. Drexler agreed that until the Senior Creditor were indefeasibly paid in full, Drexler would not exercise his rights under certain lending agreements and would not exercise "any other right remedy available at law or equity, nor will [Drexler] commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against Borrower."

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

51. Drexler expressly agreed that the Noteholder's shall receive "full payment" before Drexler receives any payments from Debtor. (Intercreditor/Subordination Agreement at Section 7). All payments otherwise received by Drexler from Debtor are to be delivered to the Senior Creditor, until they are paid in full. (*Id*. at Section 6).

52. Drexler waived any right to "take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Senior Debt or the Liens of Senior Creditor in respect of any of the Collateral or the provisions of this Agreement." (*Id*. at Section 10). That waiver extends to "any action that would interfere with any exercise of rights or remedies undertaken by Senior Creditor under the Senior Loan Documents," as well as any right to "contest, protest, object to, or interfere with the manner in which Senior Creditor seeks to enforce its rights and remedies under the Senior Loan Documents, including enforcement of its Liens in any Collateral." (*Id*.).

53. Drexler Agreed that the Senior Creditor will be paid in full prior to Drexler receiving any payment or distribution. (Intercreditor/Subordination Agreement at Section 15.1).

54. Drexler agreed not to "initiate, prosecute or participate in any claim, action or other proceeding challenging the enforceability, validity, perfection or priority of any portion of the Senior Debt or any liens or security interests securing any portion of the Senior Debt." (Intercreditor/Subordination Agreement at Section 15.3).

55. Drexler agreed that he "will not object to or oppose" "any sale or other disposition of any property security all or any party of the Senior Debt . . . under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code," if the Senior Creditor consented to such sale or disposition." (Intercreditor/Subordination Agreement at Section 15.4).

56. Drexler agreed that he would not vote his claim in any plan of reorganization that does not pay the Senior Creditor in full or would otherwise be inconsistent with his obligations in the Intercreditor/Subordination Agreement. (Intercreditor/Subordination Agreement at Section 15.5).

57. Furthermore, Drexler appointed the Senior Creditor as his attorney in fact, and

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

granted Senior Creditor a power of attorney with full power of substitution to, *inter alia*:

a. To vote such claim to accept or reject any plan of reorganization, and

b. To take any other action in connection with any such Insolvency Proceeding that Subordinated Creditor would be authorized to take but for this Agreement.

(Intercreditor/Subordination Agreement at Section 16).

58. Drexler's actions to promote the DIP proposal of White Winston is a violation of the Intercreditor/Subordination Agreement.

59. The Trustee Motion is a violation of the Intercreditor/Subordination Agreement, as it seeks to interfere with Senior Creditor's exercise of rights or remedies.

60. Drexler's actions to object to the Plan Term Sheet, seeking the appointment of the Trustee, issuance of discovery for the purposes of interfering with the Plan Term Sheet, and insistence that he will object to the plan, 363 sale, 9019 motion, and bid procedures are all breaches or anticipatory breaches of the Intercreditor/Subordination Agreement.

61. Accordingly, Secured Creditor seeks specific performance of the Intercreditor/Subordination Agreement, including but not limited to:

i. Injunctive relief preventing Drexler from taking any action that interferes with Secured Creditor's settlement of any lien or claim;

ii. Injunctive relief prohibiting Drexler's interference with any sales process under 11 U.S.C. § 363;

iii. Injunctive relief prohibiting Drexler from taking any action to object or interfere with a plan supported by Secured Creditor, including the Plan Term Sheet.

iv. An order authorizing Secured Creditor to exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization; and

v. An order authorizing Secured Creditor to substitute itself in place of Drexler in the Trustee Motion, and withdrawing the same.

62. Secured Creditor has been required to retain the services of an attorney and to incur

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

costs to prosecute this action, and is entitled to recover its attorneys' fees and costs incurred in prosecuting this matter.

**SECOND CLAIM FOR RELIEF**
**(DECLARATORY RELIEF)**

63. Senior Creditor realleges and adopts the allegations set forth in the preceding paragraphs as if fully set forth herein below.

64. The Intercreditor/Subordination Agreement is a valid and binding agreement between Senior Creditor, Debtor, and Drexler.

65. Senior Creditor seeks a declaration of Drexler's rights under the Intercreditor/Subordination Agreement.

66. Senior Creditor seeks a declaration that the Trustee Motion breached the Intercreditor/Subordination Agreement.

67. Senior Creditor seeks a declaration that the Intercreditor/Subordination Agreement prohibits Drexler from Drexler is prohibited from taking any action that interferes with Secured Creditor's settlement of any lien or claim.

68. Senior Creditor seeks a declaration that Drexler may not interfere with any sales process under 11 U.S.C. § 363.

69. Senior Creditor seeks a declaration that Drexler may not take any action to object or interfere with a plan supported by Secured Creditor, including the Plan Term Sheet.

70. Senior Creditor seeks a declaration that Secured Creditor may exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization.

71. Senior Creditor seeks a declaration that Secured Creditor may substitute itself in place of Drexler in the Trustee Motion, and withdraw the same.

72. Secured Creditor has been required to retain the services of an attorney and to incur costs to prosecute this action, and is entitled to recover its attorneys' fees and costs incurred in prosecuting this matter.

. . .

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

## V.
## PRAYER FOR RELIEF

WHEREFORE, the Secured Creditor demands judgment against Drexler as follows:

1. For Specific Performance for:

   i. Injunctive relief preventing Drexler from taking any action that interferes with Secured Creditor's settlement of any lien or claim;

   ii. Injunctive relief prohibiting Drexler's interference with any sales process under 11 U.S.C. § 363;

   iii. Injunctive relief prohibiting Drexler from taking any action to object or interfere with a plan supported by Secured Creditor, including the Plan Term Sheet.

   iv. An order authorizing Secured Creditor to exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization; and

   v. An order authorizing Secured Creditor to substitute itself in place of Drexler in the Trustee Motion, and withdrawing the same.

2. For a declaration of rights that:

   i. Drexler is prohibited from taking any action that interferes with Secured Creditor's settlement of any lien or claim;

   ii. Drexler may not interfere with any sales process under 11 U.S.C. § 363;

   iii. Drexler may not take any action to object or interfere with a plan supported by Secured Creditor, including the Plan Term Sheet.

   iv. Secured Creditor may exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization; and

   v. Secured Creditor may substitute itself in place of Drexler in the Trustee Motion, and withdrawing the same.

3. For reasonable attorney fees and costs; and

. . .

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

4. For such further relief the Bankruptcy Court finds just and proper.

DATED this 15th day of May, 2023.

GARMAN TURNER GORDON LLP

*/s/ Teresa M. Pilatowicz*
GREGORY E. GARMAN, ESQ.
WILLIAM M. NOALL, ESQ.
TERESA M. PILATOWICZ, ESQ.
DYLAN T. CICILIANO, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Empery Tax Efficient, LP*

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000