GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6665
E-mail: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
TERESA M. PILATOWICZ
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
DYLAN T. CICILIANO
Nevada Bar No. 12348
E-mail: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Empery Tax Efficient, L.P.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.: 22-14422-NMC<br><br>Chapter 11 |
| EMPERY TAX EFFICIENT, LP<br><br>Plaintiff,<br><br>v.<br><br>RYAN DREXLER,<br><br>Defendant. | Adv. Pro. No. 23-01093-NMC |
| RYAN DREXLER,<br><br>Counterclaimant,<br><br>v.<br><br>EMPERY TAX EFFICIENT, LP,<br><br>Counterdefendant. | |

**AMENDED ADVERSARY COMPLAINT**

Plaintiff Empery Tax Efficient, LP, ("Senior Creditor") by and through its undersigned

attorneys, files this complaint ("Complaint") against defendant Ryan Drexler ("Drexler") and alleges as follows:

## I.
## GENERAL ALLEGATIONS

1. In 2021, a group of investors, collectively the "Noteholders", with Senior Creditor as the collateral agent, provided the publicly traded Debtor MusclePharm Corporation ("Debtor") with millions of dollars in short-term financing ("Financing"). The Financing occurred while there was litigation between Debtor and Debtor's shareholder, White Winston Select Asset Fund Series Fund MP-18, LLC ("White Winston"), wherein White Winston alleged, *inter alia*, that Drexler had placed his interests above Debtor and enriched himself through convertible notes issued by Debtor. Given the nature of the litigation and the allegations, as well as other claims pending against Debtor, the conditions of Financing, including the Intercreditor/Subordination Agreement (as defined below), were paramount to the Noteholders.

2. As a key condition precedent to the Financing, the Noteholders required that Debtor's Chief Executive Officer, Chairman, largest shareholder, and debtholder, Drexler agree to and execute an intercreditor and subordination agreement (collectively, with any amendment thereto, the "Intercreditor/Subordination Agreement"). Not only did the Intercreditor/Subordination Agreement set forth the parties' relative payment priorities, subordinating all debts held by Drexler to the Noteholders, but the parties prominently and expressly established their relative rights in the event Debtor found itself in bankruptcy.

3. Specifically, Drexler agreed in the Intercreditor/Subordination Agreement that in no way would he interfere with the Noteholders' ability to collect their debt against Debtor, and specifically that he would not receive payments from Debtor prior to the Noteholders, have no standing to challenge the sale of Debtor's assets, would allow Senior Creditor to provide DIP financing, would not vote against a plan supported by the Noteholders, and would not contest the Noteholders' claims. Furthermore, he granted the Noteholders a broad power of attorney over many decisions to be made by Drexler in the bankruptcy. In other words, while Drexler now complains that he does not have a seat at the negotiation table, in fact, Drexler contractually agreed

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

to forego most of the rights and now only enjoys those limited rights to which he did not forego. What was abundantly clear is that Drexler was prohibited from interfering with the plan process and Noteholders' ability to negotiate a consensual resolution of their and Drexler's claims with the Debtor and the Debtor's other creditors. This prohibition extends to initiating actions, including adversaries and contested actions, which impact the Senior Creditor's ability to enforce its rights, as it sees fit.

4. As time went on, Drexler's malfeasance was laid bare, as instances of his deceit and wrongdoing became public through the disclosure of a previously undisclosed ongoing SEC investigation, and a number of lawsuits, including allegations that Drexler had adulterated Debtor's products, leading to complaints from Debtor's then largest customer, Costco, and allegations that Drexler devised and implemented a scheme to go from contract manufacturer to contract manufacturer, running up the payables with each contract manufacturer into the millions, and then refusing to pay the invoices. After burning all bridges and facing the inevitable, Drexler caused Debtor to commence the above-captioned bankruptcy case ("Chapter 11 Case") for the purpose of halting Noteholders' efforts to enforce their rights.

5. Drexler retained Debtor's counsel, Schwartz Law, and mounted an effort to promote White Winston's proposed debtor in possession financing. At some point in December 2022 or January 2023, Drexler resigned as Debtor's CEO and chairman. After relinquishing his ability to direct decisions of the Debtor for his personal benefit, Drexler became at odds with Debtor's fiduciaries, who, rather than promoting Drexler's interests, were and are acting in the best interest of the estate and its creditors.

6. Since his departure, in violation of the Intercreditor/Subordination Agreement, Drexler has menaced and taken various actions to undermine and interfere with the recovery by Senior Creditor, as collateral agent for the Noteholders. For example, Drexler supported White Winston's DIP financing proposal over Empery's; Drexler brought an action in Nevada state court against Senior Creditor, which was dismissed on May 30, 2023; and Drexler sued Tim Silver, a portfolio manager of Empery Asset Management, LP ("EAM"), Senior Creditor's investment advisor, in yet another Nevada State Court, over communications Silver had with other creditors

made "during the scope" and related to the administration of the Chapter 11 Case. Senior Creditor has and continues to successfully defend against these wrongful actions of Drexler outside of the Bankruptcy Court.

7. However, now that Debtor, the Senior Creditor, White Winston, and the Official Committee of Unsecured Creditors ("Committee") have reached an agreement that is expected to resolve most of the controversy and disputes in the Chapter 11 Case, Drexler has embarked on a last-ditch effort to sabotage Debtor's restructuring and the bankruptcy itself for his own benefit. Drexler has launched a scorched earth campaign to intimidate Debtor's suppliers through overbroad and abusive discovery requests claiming, without evidence, price gouging. Moreover, Drexler's counsel has been abundantly clear that Drexler's actions and barrage of discovery are for the express purpose of challenging the plan term sheet, to disrupt Debtor's current management, and to object to the 363-sale called for in the plan term sheet as well as the plan of reorganization called for therein, all of which are express violations of his Intercreditor/Subordination Agreement and the parties' respective rights.

8. While Drexler has approached the Court with ideas of fairness, his own aim and goal is to interfere with the recovery by the Senior Creditor and other creditors of Debtor. ***Drexler ignores that he bargained away many of the rights provided to him by the Bankruptcy Code, including his right to interfere or object to Senior Creditor's actions***. Moreover, Drexler is not a do-gooder; he is an obstructionist out to maximize his personal gain at the cost of the estate. Without years of Drexler's gross mismanagement and broken promises and agreements to vendors, investors, and lenders, Debtor would not be in bankruptcy.

9. Accordingly, Senior Creditor brings this action to enforce the Intercreditor/Subordination Agreement, as well as to specifically enforce the terms thereof.

## II.
## PARTIES

10. Senior Creditor is a Delaware limited partnership. Senior Creditor is the collateral agent for the Noteholders and a party to that certain October 13, 2021 Intercreditor/Subordination Agreement.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

11. Ryan Drexler's principal residence is, and at all times relevant herein was, in the State of Nevada.

## III.
## JURISDICTION AND VENUE

12. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding under, *inter alia*, 28 U.S.C. § 157(b)(2)(K). This Court has jurisdiction over Drexler because his actions were designed to deplete the bankruptcy estate.

13. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this proceeding arises under cases pending in this Judicial District.

14. Secured Creditor consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## IV.
## FACTUAL BACKGROUND

### A. An Intercreditor/Subordination Agreement between Debtor, Drexler and the Noteholders was a condition precedent to millions of dollars in secured pre-petition financing.

15. Drexler was Debtor's largest shareholder, its Chief Executive Officer, Chairman of its Board of Directors, and creditor.

16. Drexler alleges that he made a series of loans to Debtor to fund its business operations that were initially secured by Debtor's collateral.

17. On October 13, 2021, Senior Creditor, Empery Master Onshore, LLC ("EMO"), Empery Tax Efficient III, LP ("ETE3"), and Empery Debt Opportunity Fund, LP ("EDOF," and collectively with EMO, Empery and ETE3, the "Empery Noteholders"), along with Ionic Ventures, LLC, Anson Investments Master Fund LP, CVI Investments, Inc., HB Fund LLC, Intracoastal Capital LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, L1 Capital Global Opportunities Master Fund, and Altium Growth Fund, LP (collectively, with the Empery

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Noteholders, the "October Noteholders") entered into a Securities Purchase Agreement (the "SPA") with Debtor. In conjunction with the SPA, Debtor issued the October Noteholders Original Issue Discount Senior Secured Notes Due April 13, 2022 (collectively, the "October Notes"), which had a maturity date that could be extended up to 45 days, in the principal amount of $8,197,674.42. Senior Creditor is the Collateral Agent for all secured Noteholders.

18. The SPA is not a standalone document and incorporates the "Transaction Documents," which are defined to include the Intercreditor/Subordination Agreement between Drexler and the October Noteholders.

19. Also on October 13, 2021, Debtor entered into a Pledge and Security Agreement (the "Security Agreement"), granting security interests, and pledging a substantial portion of its and its subsidiaries personal and intellectual property to the October Noteholders (hereinafter, the "Collateral").

20. At the time, Drexler also held certain security interests in the Collateral. Accordingly, and as an express condition precedent to the effectiveness of the SPA, on October 13, 2021, Drexler, the October Noteholders, and Debtor entered into the Intercreditor/Subordination Agreement that defines the relative rights of those who held security interests in the Collateral.

21. In March 2022, Debtor requested permission from the Noteholders to establish a new revolving credit facility with Drexler to finance inventory to better control Debtor's margins on orders with Debtor's then largest customer, Costco. On March 8, 2022, Debtor issued Drexler an unsecured promissory note (the "Drexler Unsecured Revolver").

22. At about the same time that Debtor issued Drexler the Drexler Unsecured Revolver, Drexler, the October Noteholders and Debtor entered into the First Amendment to Intercreditor and Subordination Agreement (the "First Amendment"). The First Amendment was expressly entered into because: "[Drexler] desires to extend credit to [Debtor] and [Debtor] desires to borrow from [Drexler], pursuant to the terms of the Unsecured Revolving Promissory Note dated as of the date hereof in the form attached hereto as Exhibit A . . . ." (*Id* at p.1).

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**B. The Intercreditor/Subordination Agreement limited Drexler's rights in the event of Debtor's Bankruptcy.**

23. Under Section 11 U.S.C. §510, a properly executed intercreditor agreement overrides priorities and allows parties to customize their rights. *In re Grail Semiconductor Sedgwick Fundingco, LLC v. Newdelman*, 15-29890-A-7, 2022 WL 194384, at *21–22 (Bankr. E.D. Cal. Jan. 20, 2022). Intercreditor agreements define the rights and remedies of creditors vis-à-vis each other with respect to a common debtor. *Bowling Green Sports Center, Inc., v. G.A.G. LLC*, 413 Ill.Dec. 123, 128 (Ill. App. Ct. 2017); 11 U.S.C. § 510(a); *Sun Life Assurance Co. of Canada v. Great Lakes Business Credit LLC*, 968 F.Supp.2d 898, 910 (N.D. Ill. 2013) (applying Michigan law); Jonathon P. Friedland, *Commercial Bankruptcy Litigation* § 18:1 (January 2021) (such agreements "confirm[ ] or modif[y] the pre-existing priority rankings of those claims relative to each other...").

24. The Intercreditor/Subordination Agreement is an enforceable subordination agreement under 11 U.S.C. § 510, and is "effective before, during and after the commencement of an Insolvency Proceeding with respect to Borrower." (Intercreditor/Subordination Agreement at Section 14).

25. Drexler, the Debtor, and Senior Creditor, as representative on behalf of the Noteholders, signed the Intercreditor/Subordination Agreement.

26. The Intercreditor/Subordination Agreement defines an "Insolvency Proceeding" as "any case, action or proceeding before any court or other Governmental Authority relating to bankruptcy, reorganization, insolvency, liquidation, receivership, dissolution, winding-up or relief of debtors or (y) any general assignment for the benefit of creditors, formal or informal moratorium, composition, marshaling of assets for creditors or other, similar arrangement in respect of its creditors generally or any substantial portion of its creditors, in each case, undertaken under the Bankruptcy Code or other applicable law." (Intercreditor/Subordination Agreement at Section 3). The Chapter 11 Case is undeniably an Insolvency Proceeding under the Intercreditor/Subordination Agreement.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

27. Pursuant to Section 2 of the Intercreditor/Subordination Agreement, Drexler expressly subordinated any interest that he had in the Collateral to the Senior Creditor, as well as all other debts. Specifically, "all loans, advances, debts, liabilities, obligations debit balances, covenants and duties at any time or times owed by" Debtor to Drexler or to any entity control by Drexler, were subordinated in right of payment to "all loans, advances, debts, liabilities, obligations, debit balances, covenants and duties at any time or times owed by Borrower or any of its subsidiaries to [the Senior Creditor] under the Securities Purchase Agreement, the Notes or any other Transaction Document . . . , whether now or hereafter created . . . (Intercreditor/Subordination Agreement at Section 3, First Amendment at Section 3). This expressly included all loans made or credit extended to Debtor in an Insolvency Proceeding—i.e. debtor in possession financing. Additionally, that included all attorneys' fees incurred by the Senior Creditor in the Insolvency Proceeding.

28. Drexler agreed that "neither Borrower nor any of its subsidiaries shall, directly or indirectly, make any payment on account of the subordinated debt. (Intercreditor/Subordination Agreement at Section 4). Drexler also agreed that he would not "exchange, set off, release, convert to equity or otherwise discharge any part of the Subordinated Debt; "give any subordination in respect of the Subordinated Debt or transfer or assign any of the Subordinated Debt to any Person," and "take or permit any action prejudicial to or inconsistent with Senior Creditor's priority position over Subordinated Creditor." (*Id*).

29. Drexler further agreed that until the Noteholders, including Senior Creditor, were indefeasibly paid in full, Drexler would not exercise his rights under certain lending agreements and would not exercise "any other right remedy available at law or equity, nor will [Drexler] commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against Borrower." (Intercreditor/Subordination Agreement at Section 4).

30. In an Insolvency Proceeding, Drexler expressly agreed that the Noteholders shall receive "full payment" before Drexler receives any payments from Debtor. (Intercreditor/Subordination Agreement at Section 7). All payments otherwise received by Drexler

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

from Debtor are to be delivered to the Senior Creditor, until the Noteholders are paid in full. (*Id.* at Section 6).

31. Importantly, Drexler waived any right to "take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Senior Debt or the Liens of Senior Creditor in respect of any of the Collateral or the provisions of this Agreement." (Intercreditor/Subordination Agreement at Section 10). That waiver extends to "***any action that would interfere with any exercise of rights or remedies undertaken by Senior Creditor under the Senior Loan Documents***," as well as any right to "contest, protest, object to, or interfere with the manner in which Senior Creditor seeks to enforce its rights and remedies under the Senior Loan Documents, including enforcement of its Liens in any Collateral." (*Id.*)(emphasis added).

32. Expressly, Drexler, Debtor and the Senior Creditor agreed on the parties' respective rights in the event of an Insolvency Proceeding:

a. The Noteholders will be paid in full prior to Drexler receiving any payment or distribution. Section 15.1.

b. Drexler irrevocably directs the Debtor or any other person with authority, including a trustee, to pay all distributions due to Drexler to the Senior Creditor. Section 15.2.

c. Drexler agreed not to "initiate, prosecute or participate in any claim, action or other proceeding challenging the enforceability, validity, perfection or priority of any portion of the Senior Debt or any liens or security interests securing any portion of the Senior Debt." Section 15.3

d. Drexler agreed that "he/it will not object or oppose . . . any debtor-in-possession financing" presented by Senior Creditor. Section 15.4. He also agreed not to "provide, or offer to provide, any debtor-in-possession financing to Borrower. *Id.*

e. Drexler agreed that he "will not object to or oppose" "any sale or other disposition of any property security all or any party of the Senior Debt . . . under Section 363

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

of the Bankruptcy Code or any other provision of the Bankruptcy Code," if the Senior Creditor consented to such sale or disposition." Section 15.4.

f. Drexler agreed that he would not vote his claim in any plan of reorganization that does not pay the Senior Creditor in full or would otherwise be inconsistent with his obligations in the Intercreditor/Subordination Agreement. Section 15.5.

g. Drexler agreed that his claims were to be treated as a separate class from the Senior Creditor. Section 15.7.

33. Furthermore, Drexler appointed the Senior Creditor as his attorney in fact, and granted Senior Creditor a power of attorney with full power of substitution to, *inter alia*:

a. to vote such claim to accept or reject any plan of reorganization, and

b. to take any other action in connection with any such Insolvency Proceeding that Subordinated Creditor would be authorized to take but for this Agreement.

(Intercreditor/Subordination Agreement at Section 16).

34. The First Amendment amended the Intercreditor/Subordination Agreement to permit Drexler to receive, absent a breach of the Loan Documents, "the proceeds of Costco Accounts Receivables in connection with the Advance . . . directly related to such Costco Account Receivables." (First Amendment at Section 1(b)).

**C. Drexler is actively interfering with Senior Creditor's rights under the Intercreditor/Subordination Agreement.**

35. Throughout the Chapter 11 Case, Drexler has been adverse to the Senior Creditor. He has engaged in overt and covert acts to undermine and harass Senior Creditor. *See e,g, Drexler v. Silver*, Case No. 3:23-cv-00128-RCJ (D. Nev. 2023). Drexler's conduct during these proceedings is a microcosm of his acts that caused Debtor to file the Chapter 11 Case in the first instance.

*a. Drexler worked with White Winston to thwart Senior Creditor's Article 9 Sale.*

36. There is no dispute that Debtor had defaulted on its debt to the Noteholders. And by September 2022, Senior Creditor and Debtor made numerous good faith efforts to negotiate a resolution, only to be thwarted on each occasion by Drexler, who repeatedly failed to deliver on

his promises. As a result, Senior Creditor took action to exercise its rights and remedies under the Senior Loan Documents, including noticing an Article 9 sale of Debtor's assets securing its debt to the Noteholders.

37. Also in September 2022, Drexler caused Debtor to pay him $200,000.00 under the false premise that it was permitted under the Intercreditor/Subordination Agreement, which upon information and belief, in fact violated the Intercreditor/Subordination Agreement, as Costco was no longer Debtor's customer and because funds advanced to Debtor by Drexler were not related to Costco whatsoever. The payment therefore violated the Intercreditor/Subordination Agreement.

38. At that time, Drexler found an unlikely ally in White Winston. While Drexler was misleading Senior Creditor about his desire to reach a consensual resolution, in November 2022, Drexler, after misleading White Winston about the state of the Debtor, was negotiating a settlement agreement with White Winston that would further indebt Debtor and transfer assets to White Winston.

39. On December 5, 2022, Drexler, personally and on behalf of Debtor, executed a settlement agreement with White Winston (the "Settlement Agreement"). The Settlement Agreement was part of a deliberate scheme to thwart Senior Creditor's efforts to exercise its rights and remedies. In addition to violating numerous terms of the Senior Loan Documents, as part of the Settlement Agreement, Drexler agreed to several terms that violated the Intercreditor/Subordination Agreement. First, Drexler granted White Winston a security interest in all of Debtor's assets, including those securing the Noteholders' debt:

> MusclePharm's obligation to pay the Cash Settlement Amount shall be secured by a perfected security interest in favor of White Winston in all of the assets of MusclePharm and of its subsidiaries (the "MusclePharm Assets"). MusclePharm and Drexler hereby authorize White Winston to file UCC-1 financing statements as necessary to perfect its security interest in the MusclePharm Assets granted pursuant to this Section 1.e immediately upon the Parties' execution of this Agreement. (Settlement Agreement Section 1I).
>
> Drexler likewise caused Debtor to grant a "security interest" in all of Debtor's assets to secure a convertible bond to White Winston. (Settlement Agreement at Section 2).

These provisions expressly violate the Intercreditor/Subordination Agreement, as they grant a third-party a security interest in Noteholder's collateral without their consent.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

40. Additionally, Drexler agreed that White Winston would be paid *pari passu* with Drexler's Subordinated Debt. (Settlement Agreement at Section 4(b)). This thwarted the Noteholders' rights under the Senior Loan Documents and their right to collect all payments made to Drexler under the Intercreditor/Subordination Agreement, as Drexler effectively subordinated his own right to payment.

41. Consequently, on December 14, 2022, Senior Creditor filed a complaint in the Supreme Court of the State of New York County of New York ("New York State Court") against MusclePharm, White Winston, and Drexler, seeking a temporary restraining order and permanent injunction enjoining the consummation of the Settlement Agreement, among other things.

42. On December 15, 2022, the New York State Court entered a temporary restraining order prohibiting MusclePharm, White Winston, and Drexler from consummating the Settlement Agreement and from taking other action to dispose of any MusclePharm assets.

43. Drexler's efforts and breaches of the Intercreditor/Subordination agreement caused substantial damages to Senior Creditor, including but not limited to attorneys' fees incurred in stopping Drexler's actions.

*b. Drexler worked with White Winston to thwart Senior Creditor's DIP Financing proposal.*

44. After losing the temporary restraining order, Drexler, with the assistance of White Winston, retained bankruptcy counsel to file Debtor's bankruptcy. As part of the filing, upon information and belief, Drexler agreed that Debtor would support debtor-in-possession financing from White Winston.

45. To that end, Drexler took overt actions to assist White Winston in its failed efforts to provide DIP Financing to Debtor, in lieu of Senior Creditor's proposal, a violation of the Intercreditor/Subordination Agreement. Specifically, Drexler was a proposed signatory to several of the DIP Financing proposals. In addition, Drexler shared and provided White Winston with privileged communications between Debtor and Drexler, for the purpose of giving White Winston an advantage in becoming the DIP Financing lender.

46. Upon information and belief, during this time, Drexler was also lobbying/directing

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Debtor's board members to reject Empery's DIP financing proposal in favor of White Winston's proposal.

47. On January 3, 2023, Debtor filed the *Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Priming Liens and Administrative Expense Claims, (III) Authorizing the Debtor's Use of Case Collateral, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief.* [ECF No. 33]. Drexler's agreements in the White Winston DIP financing proposal violated the Intercreditor Agreement in a number of ways. Drexler: (1) agreed to subordinate the Subordinated Debt to White Winston [Intercreditor Agreement, § 4(w)]; (2) assigned his claims against Debtor and proceeds therefrom to White Winston [Intercreditor Agreement, § 4(w)]; and (3) sought payment of $150,000 from the WW DIP Proposal before the Noteholders were paid in full [Intercreditor Agreement § 4(z), 7, 15.1 & 15.2]. Not only does this evidence the fact that Drexler was working with White Winston, but further evidences Drexler's continuing violations of the Intercreditor/Subordination Agreement, as Drexler had already assigned all proceeds to Senior Creditor pursuant to the Intercreditor/Subordination Agreement and Drexler was prohibited from collecting any proceeds from Debtor until Senior Creditor had been paid in full.

48. On January 6, 2023, Debtor provided notice that it was supporting Senior Creditor's DIP Financing proposal. The same day, Drexler adopted White Winston's arguments in opposition to Empery's DIP Financing proposal in open court, and in fact argued against Drexler's obligation to vote in favor of a plan supported by Empery.

49. By January 10, 2023, Drexler informed White Winston's principal that Drexler "had a *plan*." Upon information and belief, that plan included a coordinated effort between White Winston and Drexler to subordinate Senior Creditor's claim and ensure that White Winston's DIP Financing was approved over Senior Creditor's DIP financing.

50. On February 6, 2023, Drexler sought and was granted a 2004 Exam of Senior Creditor. [ECF No. 200]. The next day Drexler agreed that he would share discovery received with White Winston's litigation counsel that would bring subordination claims against Senior Creditor. Drexler further informed White Winston that a "related development" would be coming that day.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

51. On February 7, 2023, Drexler filed a complaint in the Eighth Judicial District Court of Nevada against Senior Creditor, styled *Drexler v. Empery Tax Efficient, LP*, Case No. A-23-865375-C (the "Drexler Action"), wherein Drexler alleged that Senior Creditor manufactured Debtor's events of Default. Drexler then provided the Complaint to White Winston to be used in its February 8, 2023, *Evidentiary Objection of Creditor White Winston Select Asset Funds, LLC to Declaration of Timothy Silver* [ECF 216]. In the objection, White Winston used the Drexler Action as a basis to reject the Senior Creditor DIP Financing Proposal, claiming that "[t]he complaint is only the proverbial tip of the iceberg on Mr. Drexler's side of the story." [*Id*. at p.3]. The Drexler action was clearly timed to coincide with the February 9, 2023 hearing to approve Senior Creditor's DIP Financing proposal.

52. On February 9, 2023, the Court orally approved Senior Creditor's DIP Financing proposal, subject to a final order.

*c. Drexler worked with White Winston to subordinate Senior Creditor's claim.*

53. Unbeknownst to Senior Creditor at the time, the Drexler Action was not the only lawsuit contemplated by Drexler to interfere with Senior Creditor's rights under the Senior Loan Documents and Intercreditor/Subordination Agreement. Shortly after Senior Creditor's DIP Financing was approved, Drexler asked White Winston to have its attorneys meet with Drexler's Reno attorneys, which have no involvement in the Bankruptcy, so that Drexler could get a "complaint out."

54. Within days of the meeting, on March 2, 2023, Drexler sued Senior Creditor employee Tim Silver in Washoe County, Nevada, *Drexler v. Silver*, Case No. 3:23-cv-00128-RCJ (D. Nev. 2023),[1] based on Silver's negotiations with creditors that supported Senior Creditor's DIP Financing Proposal over White Winston's (the "Silver Action").

55. On March 9, 2023, White Winston commenced adversary No. 23-01014-nmc (the "WW Adversary") against Senior Creditor. White Winston sought to subordinate Senior Creditor's claim, which upon information and belief was part of Drexler's plan that came about after the

[1] Silver later removed the case to the Nevada Federal District Court.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Debtor chose Senior Creditor's DIP Financing.

56. Drexler's plan failed: Senior Creditor's DIP Financing was approved, the Drexler Action was dismissed, and the Silver Action is facing dismissal under Nevada's Anti-SLAPP Statute. However, these violations of the Intercreditor/Subordination Agreement injured Senior Creditor, including by causing it to incur substantial attorneys' fees and costs.

*d. Drexler has continued to violate the Intercreditor/Subordination Agreement by objecting to the Plan Support Agreement and Disclosure Statement and seeking a Trustee.*

57. Despite Drexler's best efforts to sow discord, sabotage the Chapter 11 Case and harm the Senior Creditor, over the last several months, the Senior Creditor, the successor to secured creditor Prestige Capital Finance, LLC's claim, the Committee, Debtor, and White Winston negotiated and agreed to a "Plan Term Sheet" (the "Plan Term Sheet"). The Plan Term Sheet contained the "material terms" to be incorporated into the Debtor's chapter 11 plan of reorganization. The Plan Term Sheet further called for a 363 Sale under the Bankruptcy Code, for substantially all of Debtor's assets, in which the Senior Creditor holds a secured interest. The Plan Term Sheet was subsequently detailed in a Plan Support Agreement,[2] and *Plan of Reorganization for MusclePharm Corporation Under Chapter 11 of the Bankruptcy Code Date May 26, 2023* [ECF No. 553] (along with its amendments, the "Plan"). In other words, the Senior Creditor had elected how it would enforce its rights, and Drexler was prohibited from taking ***any action that would interfere*** with the exercise of those rights.

58. The Intercreditor/Subordination Agreement expressly prevents Drexler from taking any action that interferes with the Senior Creditor's rights in the Collateral, including a 363 sale. Likewise, the Senior Creditor is entitled to, as Drexler's attorney in fact and under a power of

[2] *See Debtor's Motion to Approve Bidding Procedures for the Sale of Assets Pursuant to 11 U.S.C. §§ 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004* [ECF No. 497] and the *Debtor's Motion Pursuant to 11 U.S.C. §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 to Approve Settlement and Plan Support Agreement with: (I) the Official Committee of Unsecured Creditors; (II) Empery Tax Efficient, LP, in its Capacity as Collateral Agent and Administrative Agent for MP Collateral, LLC; and (III) White Winston Select Asset Funds, LLC* [ECF No. 529]

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

substitution, agree to a proposed plan and take any other action that Drexler is prohibited from taking.

59. It is known that Drexler became aware of the Plan Term Sheet several weeks before it was finalized, as Drexler's escalated conduct demonstrated. Finding himself without a seat at the table, ***a seat he expressly waived in the Intercreditor/Subordination Agreement***, Drexler devised alternative illicit means to leverage parties in interest.

60. Foremost, and as detailed in the record, Drexler issued a dozen or more Rule 2004 exams, subpoenas, and requests for production of documents to Debtor, its employees, and other creditors. The onerous and extensive subpoenas were designed to overburden and tax the estate and creditors to the point that they would seek to abandon the Plan Term Sheet in favor of settlements with Drexler. In the most literal sense, they were designed to interfere with the Plan Term Sheet and prevent the Senior Creditor from recovering on its claim, express violations of the Intercreditor/Subordination Agreement.

61. Then, in a brazen attempt to circumvent the Intercreditor/Subordination Agreement and halt the Plan Term Sheet, Drexler filed his baseless "Motion for the Appointment of a Chapter 11 Trustee" [ECF No. 447] (the "Trustee Motion"), a motion that Drexler voluntarily withdrew with prejudice. The Trustee Motion was a violation of the Intercreditor/Subordination Agreement.

62. The Trustee Motion transparently admitted that Drexler sought the appointment of a receiver to impede the settlement of the Senior Creditor's claims, as contemplated by the Plan Term Sheet. (ECF No. 447 at p.3:3-8). Drexler argued that he was in fact seeking a Trustee to defeat the Plan Term Sheet, insisting that he wants an "independent trustee in this case, someone who will negotiate with all the parties and be in a position to make truly independent business decisions to restructure and improve the operations and enhance the value of the estate for all the stakeholders." [May 9, 2023 Transcript at p.19:7-11]. The intent is clear, Drexler opposed the Plan Term Sheet—something he cannot do—and therefore sought to interfere with the administration of the estate to upset the 363 Sale and the plan outlined in the Plan Term Sheet.

63. Drexler lacked any evidence of the "market manipulation" he boldly asserted. In other words, Drexler was aimlessly harassing creditors and suppliers to interfere with the Senior

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Creditor's exercise of its rights, in violation of his contractual obligations under the Intercreditor/Subordination Agreement. But that of course is his "modus operandi." Drexler wants it to be made known that he will sue anyone that opposes his wishes, a tactic he has followed for years evidenced by a long "rap-sheet" of civil cases.

64. Furthermore, upon information and belief, after filing the Trustee Motion, Drexler attempted to negotiate with the Debtor and creditors a deal that would violate the Intercreditor/Subordination Agreement. Specifically, Drexler sought to allocate parts of Senior Creditor's secured claim to Drexler.

65. Once Drexler was forced to come forward with evidence of his allegations in the Trustee Motion, and himself sit for deposition, Drexler withdrew the Trustee Motion with prejudice, but not after taxing creditors, vendors and the Debtor with the burden of producing over 150,000 pages of documents, which confirmed that the Trustee Motion was a baseless attack that cost the estate hundreds of thousands of dollars and weeks of time lost, causing injury and damages to the Secured Creditor.

66. Drexler, in further violation of the Intercreditor/Subordination Agreement, argues that it is "highly likely" that he will oppose the approval of a plan support agreement, a 9019 motion, and a 363 sale of Debtor's assets, all of which interfere with Senior Creditor's right to collect in full the claims on behalf of the Noteholders. [*Id*. at pp. 15:1-16-1]. Additionally, Drexler intends to object to the sale procedures, rights he waived. [*Id*. at p.16:2-13]. He likewise contends that he will second guess "debtor's business judgment" and contends that he will advocate a plan contrary to that advanced by Senior Creditor, again a violation of the Intercreditor/Subordination Agreement. [*Id*. at p. 17].

67. Drexler has subsequently objected to the Plan Support Agreement and Disclosure Statement, in violation of the Intercreditor/Subordination Agreement.

68. Directly contrary to the Intercreditor/Subordination Agreement, Drexler further argued and challenged the Senior Creditor's claim amount and credit bid amount, again in violation of the Intercreditor/Subordination Agreement. [*Id*. at p.10-15].

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

69. Senior Creditor realleges and adopts the allegations set forth in the preceding paragraphs as if fully set forth herein below.

70. The Intercreditor/Subordination Agreement and the First Amendment are valid and enforceable agreements under New York state law. Moreover, they are enforceable under 11 U.S.C. § 510.

71. The Intercreditor/Subordination Agreement sets forth the parties' specific rights, including Drexler's rights and obligations in the Chapter 11 Case.

72. Drexler agreed that until the Noteholders were indefeasibly paid in full, Drexler would not exercise his rights under certain lending agreements and would not exercise "any other right remedy available at law or equity, nor will [Drexler] commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against Borrower."

73. Drexler expressly agreed that the Noteholder's shall receive "full payment" before Drexler receives any payments from Debtor. (Intercreditor/Subordination Agreement at Section 7). All payments otherwise received by Drexler from Debtor are to be delivered to the Senior Creditor, until they are paid in full. (*Id*. at Section 6).

74. Drexler waived any right to "take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Senior Debt or the Liens of Senior Creditor in respect of any of the Collateral or the provisions of this Agreement." (*Id*. at Section 10). That waiver extends to "any action that would interfere with any exercise of rights or remedies undertaken by Senior Creditor under the Senior Loan Documents," as well as any right to "contest, protest, object to, or interfere with the manner in which Senior Creditor seeks to enforce its rights and remedies under the Senior Loan Documents, including enforcement of its Liens in any Collateral." (*Id*.).

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

75. Drexler agreed that the Noteholders will be paid in full prior to Drexler receiving any payment or distribution. (Intercreditor/Subordination Agreement at Section 15.1).

76. Drexler agreed not to "initiate, prosecute or participate in any claim, action or other proceeding challenging the enforceability, validity, perfection or priority of any portion of the Senior Debt or any liens or security interests securing any portion of the Senior Debt." (Intercreditor/Subordination Agreement at Section 15.3).

77. Drexler agreed that he "will not object to or oppose" "any sale or other disposition of any property security all or any party of the Senior Debt . . . under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code," if the Senior Creditor consented to such sale or disposition." (Intercreditor/Subordination Agreement at Section 15.4).

78. Drexler agreed that he would not vote his claim in any plan of reorganization that does not pay the Senior Creditor in full or would otherwise be inconsistent with his obligations in the Intercreditor/Subordination Agreement. (Intercreditor/Subordination Agreement at Section 15.5).

79. Furthermore, Drexler appointed the Senior Creditor as his attorney in fact, and granted Senior Creditor a power of attorney with full power of substitution to, *inter alia*:

a. To vote such claim to accept or reject any plan of reorganization, and

b. To take any other action in connection with any such Insolvency Proceeding that Subordinated Creditor would be authorized to take but for this Agreement.

(Intercreditor/Subordination Agreement at Section 16).

80. Drexler received payments from Debtor that were not permitted by the Intercreditor/Subordination Agreement, inclusive of $200,000 in September 2022.

81. Drexler's execution of the Settlement Agreement is a violation of the Intercreditor/Subordination Agreement.

82. Drexler's actions to promote the DIP proposal of White Winston is a violation of the Intercreditor/Subordination Agreement.

83. The White Winston DIP proposal was violative of the Intercreditor/Subordination Agreement, in that Drexler: (1) agreed to subordinate the Subordinated Debt to White Winston;

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

(2) assigned his claims against Debtor and proceeds therefrom to White Winston; and (3) sought payment of $150,000 from the WW DIP Proposal before the Noteholders were paid in full.

84. The Drexler Action was designed to interfere with Senior Creditor's DIP proposal and is a violation of the Intercreditor/Subordination Agreement.

85. The Silver Action was designed to interfere with Senior Creditor's claim and support White Winston's subordination complaint and is a violation of the Intercreditor/Subordination Agreement.

86. Drexler's efforts to materially support White Winston in the WW Adversary is a violation of the Intercreditor/Subordination Agreement.

87. The Trustee Motion is a violation of the Intercreditor/Subordination Agreement, as it seeks to interfere with Senior Creditor's exercise of rights or remedies.

88. Drexler's actions to object to the Plan Term Sheet, seeking the appointment of the Trustee, issuance of discovery for the purposes of interfering with the Plan Term Sheet, and insistence that he will object to the plan, 363 sale, 9019 motion, and bid procedures are all breaches or anticipatory breaches of the Intercreditor/Subordination Agreement.

89. Drexler's actions to object to the Plan Support Agreement and Disclosure Statement are all breaches or anticipatory breaches of the Intercreditor/Subordination Agreement.

90. As a result of Drexler's actions, Senior Creditor has incurred damages in excess of $75,000, including but not limited to attorneys' fees and costs opposing his actions.

91. Furthermore, Senior Creditor seeks specific performance of the Intercreditor/Subordination Agreement, including but not limited to:

i. Injunctive relief preventing Drexler from taking any action that interferes with Senior Creditor's settlement of any lien or claim;

ii. Injunctive relief prohibiting Drexler's interference with any sales process under 11 U.S.C. § 363;

iii. Injunctive relief prohibiting Drexler from taking any action to object or interfere with a plan supported by Senior Creditor, including the Plan Term Sheet; and

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

iv. An order authorizing Senior Creditor to exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization.

92. Senior Creditor has been required to retain the services of an attorney and to incur costs to prosecute this action, and is entitled to recover its attorneys' fees and costs incurred in prosecuting this matter.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

93. Senior Creditor realleges and adopts the allegations set forth in the preceding paragraphs as if fully set forth herein below.

94. The Intercreditor/Subordination Agreement and the First Amendment are valid and enforceable agreements under New York state law. Moreover, they are enforceable under 11 U.S.C. § 510.

95. New York law implies a covenant of good faith and fair dealing in every contract, in which neither party shall do anything which has the effect of injuring the right of the other party to receive the benefits of the contract.

96. Drexler's execution of the Settlement Agreement, to the extent it was not a literal violation of the Intercreditor/Subordination Agreement, was designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

97. Drexler's actions to promote the DIP proposal of White Winston, to the extent it was not a literal violation of the Intercreditor/Subordination Agreement, was designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

98. The White Winston DIP proposal, to the extent it was not a literal violation of the Intercreditor/Subordination Agreement, was designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

99. The Drexler Action, to the extent it was not a literal violation of the Intercreditor/Subordination Agreement, was designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

100. The Silver Action was designed to interfere with Senior Creditor's claim and support White Winston's subordination complaint and, to the extent it was not a literal violation of the Intercreditor/Subordination Agreement, was designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

101. Drexler's efforts to materially support White Winston in the WW Adversary, to the extent it was not a literal violation of the Intercreditor/Subordination Agreement, was designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

102. The Trustee Motion, to the extent it was not a literal violation of the Intercreditor/Subordination Agreement, was designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

103. Drexler's actions to object to the Plan Term Sheet, seeking the appointment of the Trustee, issuance of discovery for the purposes of interfering with the Plan Term Sheet, and insistence that he will object to the plan, 363 sale, 9019 motion, and bid procedures, to the extent they are not a literal violation of the Intercreditor/Subordination Agreement, were designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

104. Drexler's opposition to the Plan Support Agreement and Disclosure Statement, to the extent they are not a literal violation of the Intercreditor/Subordination Agreement, were designed to deny the Senior Creditor the benefits of the Intercreditor/Subordination Agreement.

105. Drexler's efforts to interfere with Senior Creditor's benefits under the Intercreditor/Subordination Agreement succeeded and Empery suffered an injury as a result.

106. As a result of Drexler's actions, Senior Creditor has incurred damages in excess of $75,000, including but not limited to attorneys' fees and costs opposing his actions.

107. Senior Creditor has been required to retain the services of an attorney and to incur costs to prosecute this action, and is entitled to recover its attorneys' fees and costs incurred in prosecuting this matter.

**THIRD CLAIM FOR RELIEF**
**(DECLARATORY RELIEF)**

108. Senior Creditor realleges and adopts the allegations set forth in the preceding

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

paragraphs as if fully set forth herein below.

109. The Intercreditor/Subordination Agreement is a valid and binding agreement between Senior Creditor, Debtor, and Drexler.

110. Senior Creditor seeks a declaration of Drexler's rights under the Intercreditor/Subordination Agreement.

111. Senior Creditor seeks a declaration that the Trustee Motion breached the Intercreditor/Subordination Agreement.

112. Senior Creditor seeks a declaration that the Intercreditor/Subordination Agreement prohibits Drexler from taking any action that interferes with Senior Creditor's settlement of any lien or claim.

113. Senior Creditor seeks a declaration that Drexler may not interfere with any sales process under 11 U.S.C. § 363.

114. Senior Creditor seeks a declaration that Drexler may not take any action to object or interfere with a plan supported by Senior Creditor, including the Plan Support Agreement and Disclosure Statement.

115. Senior Creditor seeks a declaration that Senior Creditor may exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization.

116. Senior Creditor has been required to retain the services of an attorney and to incur costs to prosecute this action, and is entitled to recover its attorneys' fees and costs incurred in prosecuting this matter.

## V.
## PRAYER FOR RELIEF

WHEREFORE, the Senior Creditor demands judgment against Drexler as follows:

1. For compensatory damages in excess of $75,000, in an amount to be proven at trial.

2. For Specific Performance for:

   i. Injunctive relief preventing Drexler from taking any action that interferes

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

with Senior Creditor's settlement of any lien or claim;

ii. Injunctive relief prohibiting Drexler's interference with any sales process under 11 U.S.C. § 363;

iii. Injunctive relief prohibiting Drexler from taking any action to object or interfere with a plan supported by Senior Creditor, including the Plan Term Sheet; and

iv. An order authorizing Senior Creditor to exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization.

3. For a declaration of rights that:

i. Drexler is prohibited from taking any action that interferes with Senior Creditor's settlement of any lien or claim;

ii. Drexler may not interfere with any sales process under 11 U.S.C. § 363;

iii. Drexler may not take any action to object or interfere with a plan supported by Senior Creditor, including the Plan Term Sheet, Plan Support Agreement and Disclosure Statement; and

iv. Senior Creditor may exercise its rights under the power of attorney to cast Drexler's vote in favor or in rejection of a plan of reorganization.

4. For reasonable attorney fees and costs; and

5. For such further relief the Bankruptcy Court finds just and proper.

DATED this 16th day of August, 2023.

GARMAN TURNER GORDON LLP

*/s/ Teresa M. Pilatowicz*
GREGORY E. GARMAN, ESQ.
WILLIAM M. NOALL, ESQ.
TERESA M. PILATOWICZ, ESQ.
DYLAN T. CICILIANO, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Empery Tax Efficient, LP*